UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KELVIN BLAISDELL,

        Plaintiff,

v.                                Case No.  8:12-cv-1523-T-27AEP

CAROLYN W. COLVIN,
Commissioner of Social Security,[1]

        Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review of the denial of his claim for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI").  As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, I recommend that the Commissioner's decision be affirmed.

**I.**

### A.    Procedural Background

Plaintiff filed an application for a period of disability, DIB, and SSI (Tr. 120-29).  The Commissioner denied his claims both initially and upon reconsideration (Tr. 61-64, 67-80). Plaintiff then requested an administrative hearing (Tr. 81-82).  Per his request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 34-60).  Following the hearing, the ALJ

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security and should, therefore, be substituted for Commissioner Michael J. Astrue as Defendant in this action.  *See* 42 U.S.C. 405(g); Fed. R. Civ. P. 25(d).

issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 15-33).   Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-5, 11).  Plaintiff then timely filed a complaint with this Court (Dkt. No. 1).  The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

### B.      Factual Background and the ALJ's Decision

Plaintiff, who was born on October 25, 1956, claims disability beginning November 15, 2008 (Tr. 120, 127).[2]  He has a twelfth-grade education but did not graduate high school (Tr. 37, 146).  His past relevant work experience includes work as a heavy equipment operator and as a truck driver (Tr. 142).  He alleges disability due to uncontrolled diabetes, fractured discs, spinal stenosis, and depression (Tr. 141, 175).

After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: degenerative disc disease of the cervical, lumbar, and thoracic areas of the spine; diabetes mellitus; and left shoulder impingement syndrome (Tr. 20-22).  Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (Tr. 22-23).  The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform less than the full range

---

[2]  The ALJ denied a motion by Plaintiff's counsel to amend the alleged onset of disability date after finding that the record did not indicate a worsening level of severity of Plaintiff's impairments after Plaintiff stopped working as compared to when he still worked (*see* Tr. 18).

of light work except that Plaintiff should never climb ladders, ropes, scaffolds, and open heights and only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl (Tr. 23-26).  Further, Plaintiff was limited in frequently reaching overhead with his left upper extremity as opposed to constant and repetitive (Tr. 23).  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not credible to the extent they were inconsistent with the RFC (Tr. 24-26).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), the ALJ determined Plaintiff could not perform his past relevant work (Tr. 26-27).  Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a small products assembler, poly pack heat sealer, and an injection molding machine tender (Tr. 27-28).  Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 28).

## II.

To be entitled to benefits, a claimant must be disabled, meaning the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is an impairment that results

3

from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. §§ 404.1520(a), 416.920(a).  Under this process, the ALJ must determine, in sequence, the following:  whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Subpart P; and whether the claimant can perform his or her past relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience.  20 C.F.R. §§ 404.1520(a), 416.920(a).  A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389,

4

401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal.  *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## III.

Plaintiff argues here that the ALJ erred by failing to afford the proper weight to the opinion of Dr. Susan Cutchall,  by finding Plaintiff retained the RFC to perform light work, and by making an improper credibility finding.  For the reasons that follow, the ALJ applied the correct legal standards and the ALJ's decision is supported by substantial evidence.

### A.      Medical Opinion

Plaintiff first contends that the ALJ improperly considered the opinion of Dr. Cutchall.

5

In September 2010, Dr. Cutchall submitted a Physical RFC Questionnaire (Tr. 601-05).  She listed Plaintiff's symptoms as pain, numbness, and weakness in his arms and stated that Plaintiff's pain in his neck, hips, and back occurred daily, persisted constantly, and became worse with kneeling, stooping, and bending (Tr. 601-02).  Dr. Cutchall opined that Plaintiff was capable of low stress jobs, could walk half of a city block without rest or severe pain, could sit for fifteen to twenty minutes at one time, could stand for thirty to forty-five minutes at one time, could sit and stand or walk less than two hours in an eight-hour workday with normal breaks, would need periods of walking around once per hour during an eight-hour workday for about fifteen minutes each, would need a job that permitted shifting positions at will, would need frequent unscheduled breaks for about fifteen to twenty minutes during an eight-hour workday, and could frequently lift up to twenty pounds (Tr. 602-03).  According to Dr. Cutchall, Plaintiff could occasionally look down or up, frequently turn his head right or left or hold his head in a static position, occasionally climb stairs, and could rarely twist, stoop or bend, crouch or squat, and climb ladders (Tr. 604).  Further, Dr. Cutchall found that Plaintiff had significant limitations with reaching, handling, or fingering (*id.*).  As a result, Dr. Cutchall opined that Plaintiff could only spend approximately ten percent of an eight-hour workday performing fine manipulations or grasping, turning, and twisting objects and could not reach at all (*id.*).  Accordingly, Dr. Cutchall determined that Plaintiff would have good and bad days, that Plaintiff would be absent more than four days per month as a result of his impairments or treatment, and that Plaintiff's prognosis was fair to poor  (Tr. 601, 604).

In considering Dr. Cutchall's opinion, the ALJ found that certain aspects of Dr. Cutchall's

opinion were consistent with the RFC, such as the lifting and carrying restrictions at the light level, but that her statement that Plaintiff would be absent more than four days per month were based on Plaintiff's subjective reports and speculation and not on objective evidence (Tr. 23). When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). In determining the weight to afford a medical opinion, the ALJ considers a variety of factors including but not limited to the examining relationship, the treatment relationship, whether an opinion is well-supported, whether an opinion is consistent with the record as a whole, and the area of the doctor's specialization. 20 C.F.R. §§ 404.1527(c), 416.927(c). For instance, the more a medical source presents evidence to support an opinion, such as medical signs and laboratory findings, the more weight that medical opinion will receive. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). Further, the more consistent the medical opinion is with the record as a whole, the more weight that opinion will receive. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). Typically, the ALJ must afford the testimony of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004). Good cause exists where: (1) the treating physician's opinion was not bolstered by the evidence, (2) the evidence supported a contrary finding, or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). In fact, the ALJ may reject any opinion when it supports a contrary conclusion. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985).

7

In this instance, the record does not support Dr. Cutchall's opinion in its entirety, especially as to the amount of time Plaintiff would miss work due to his impairments or treatment, and the ALJ therefore appropriately did not afford controlling weight to Dr. Cutchall's opinion.  For example, Dr. Faris Zakria examined Plaintiff in November 2008 (Tr. 326-28). Plaintiff complained of right ankle pain, right shoulder pain, low back pain, left middle finger pain, bilateral hip pain, and diabetes (Tr. 326-27).  Upon examination, Dr. Zakria found Plaintiff alert, oriented, pleasant, cooperative, ambulatory, and well-built with a normal gait, with no muscle atrophy, and with muscle tone, muscle power and sensation to touch within normal limits (Tr. 327).  Upon inspection of Plaintiff's ankles, right shoulder, and bilateral hips, Dr. Zakria found no signs of tenderness or instability (*id.*).  Inspection of Plaintiff's spine revealed no spasms or tenderness (Tr. 328).  After examining Plaintiff, Dr. Zakria determined that Plaintiff was able to engage in substantial gainful employment at that time and, in fact, was currently working as a laborer (*id.*).

In March 2009, Plaintiff complained of back pain, so he underwent MRIs.  The MRIs demonstrated that Plaintiff had chronic anterior compression deformities at the T11-T12 vertebra, but with no evidence of acute fracture of the thoracic spine, and had degenerative facet arthropathy with a neural foraminal stenosis and bilateral nerve root impingement at L5-S1 (Tr. 418-21).  At that time, the physical therapist recommended only physical therapy for pain management, lumbar traction, and increased range of motion (Tr. 421).  A few days later, Plaintiff presented to Bay Pines VA Hospital ("Bay Pines") for an endocrinology consult and was fully oriented with a normal mood and affect and with no complaints of muscle weakness or

8

neuropathy (Tr. 410-14). In July 2009, Plaintiff presented to Bay Pines for a pain consultation with Dr. Lance McKitrick after complaining of chronic pain in his back and left shoulder (Tr. 362-68). During that consultation, Plaintiff admitted to abuse of cocaine and admitted smoking cocaine the prior evening (Tr. 364). Upon examination, Plaintiff demonstrated some right shoulder tenderness but with minimal impingement, left shoulder tenderness with significant impingement, tenderness bilaterally in his hips, decreased sensation in his feet and ankles, and tenderness in his thoracic and lumbar spine but with intact motor control and adequate strength (Tr. 365-66). After reviewing the March 2009 MRIs, Dr. McKitrick determined that Plaintiff had mild degenerative discopathy of the upper cervical spine with no evidence of neural foraminal or central canal stenosis, degenerative facet arthropathy with a neural foraminal stenosis and bilateral nerve root impingement at L5-S1, marked renal asymmetry with left-sided cortical atrophy, chronic anterior compression deformities at T11-T12 vertebra with no evidence of acute fracture or the thoracic spine, extensive changes of degenerative discopathy throughout, and normal cord signal throughout the thoracic region (Tr. 366-68).

Though Plaintiff's diagnostic imaging demonstrated that Plaintiff had some impairments, Plaintiff failed to demonstrate that those impairments prohibited him from working or limited him to the extent that Dr. Cutchall found. "Disability is determined by the effect an impairment has on the claimant's ability to work, rather than the diagnosis of an impairment itself." *Davis v. Barnhart*, 153 Fed. App'x 569, 572 (11th Cir. 2005). Furthermore, the severity of a medically ascertained impairment is not measured in terms of deviation from purely medical standards of bodily perfection or normality but rather in terms of its effect upon ability to work. *McCruter v.*

*Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).   Accordingly, the fact that Plaintiff had several diagnosed impairments, each of which the ALJ addressed in his opinion, did not equate to a finding of disability or provide support for Dr. Cutchall's opinion, except her finding that Plaintiff could perform the demands of light work.

Furthermore, the opinions of the two state agency medical consultants further weaken Dr. Cutchall's opinion.   Each of the state agency medical consultants reviewed the record and determined that Plaintiff maintained the ability to perform at least light work (Tr. 338-45, 588-95).[3]   In June 2009, Dr. Rinde submitted a Physical RFC Assessment in which he found that Plaintiff could occasionally lift or carry up to fifty pounds, could frequently lift or carry up to twenty-five pounds, could stand or walk for about six hours in an eight-hour workday, could sit for about six hours in an eight-hour workday, and was unlimited in his ability to push or pull (Tr. 338-45).   Essentially, Dr. Rinde found Plaintiff capable of performing medium work.   *See* 20 C.F.R. §§ 404.1567(c), 416.967(c).   Dr. Rinde further found that Plaintiff had no postural, manipulative, visual, communicative, or environmental limitations (Tr. 340-42).   Upon review of the evidence of record, Dr. Rinde determined that Plaintiff's allegations were out of proportion to the medical findings (Tr. 343).   Dr. Rinde specifically referenced statements from medical sources that indicated Plaintiff was able to engage in substantial employment and that Plaintiff had no effect on his occupational abilities except for pain (Tr. 328, 343).

Following that, in August 2009, Dr. Kline submitted a Physical RFC Assessment (Tr. 588-

---

[3]   State agency medical consultants are considered experts in the Social Security disability evaluation process.  20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i).

95).  Unlike Dr. Rinde, Dr. Kline found Plaintiff capable of performing light work.  20 C.F.R. §§

404.1567(b), 416.967(b).  Namely, Dr. Kline determined that Plaintiff could occasionally lift or

carry up to twenty pounds, could frequently lift or carry up to ten pounds, could stand or walk

about six hours in an eight-hour workday, could sit about six hours in an eight-hour workday, and

was unlimited in his ability to push or pull (Tr. 589).  Dr. Kline found Plaintiff had no visual,

communicative, or environmental limitations but that Plaintiff could only occasionally climb

ramps and stairs, balance, stoop, kneel, crouch, and crawl and could never climb ladders, ropes,

or scaffolds (Tr. 590).  Further, Dr. Kline found that Plaintiff was limited in his ability to reach

in all directions, including overhead (Tr. 591).  In addition, Dr. Kline determined that Plaintiff's

symptoms, including complaints of pain, were not entirely consistent with the evidence of record

or the diagnoses he received from health care professionals but rather appeared to exceed the

evidence from his physical examinations and medical imaging reports (Tr. 593).  Accordingly,

Dr. Kline found Plaintiff only partially credible and determined that Plaintiff maintained the

ability to function within the limits of the RFC assessment of a reduced range of light work (*id.*).

Accordingly, the ALJ properly considered the opinion of Dr. Cutchall in light of the rest

of the evidence of record.  In doing so, the ALJ appropriately found that the record did not

support Dr. Cutchall's opinion in its entirety and, most notably, did not support Dr. Cutchall's

finding that Plaintiff would miss more than four days per month due to his impairments or

treatment.  As such, the ALJ did not afford Dr. Cutchall's opinion controlling or significant

weight and established good cause for doing so.  The ALJ therefore applied the correct legal

standards and substantial evidence supports his decision.

11

### B.      RFC and Credibility

Without citing to any evidence of record in support, Plaintiff next contends that the ALJ

erred by finding Plaintiff retained the RFC to perform light work.  Instead, Plaintiff argues that

the ALJ should have found Plaintiff capable of performing only sedentary work.  At step four of

the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past

relevant work.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  To determine a

claimant's RFC, an ALJ makes an assessment based on all of the relevant evidence of record as

to what a claimant can do in a work setting despite any physical, mental, or environmental

limitations caused by the claimant's impairments and related symptoms.  20 C.F.R. §§

404.1545(a)(1), 416.945(a)(1).  Indeed, in addition to the objective evidence of record, the ALJ

must consider all the claimant's symptoms, including pain, and the extent to which these

symptoms can reasonably be accepted as consistent with the objective evidence and other

evidence.  *See* 20 C.F.R. §§ 404.1529, 416.929.

In social security disability cases, credibility determinations fall within the province of the

ALJ.  *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).  Typically, the ALJ makes

credibility determinations regarding a claimant's subjective complaints and must provide specific

reasons for the credibility finding.  *Holt v. Sullivan*, 921 F.2d 1221,1223 (11th Cir. 1991); Social

Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996).  To establish a disability based on

testimony of pain and other symptoms, the claimant must show evidence of an underlying

medical condition and either (1) objective medical evidence confirming the severity of the alleged

symptoms or (2) that the objectively determined medical condition can reasonably be expected

to give rise to the alleged symptoms. *Wilson*, 284 F.3d at 1225; *see* 20 C.F.R. §§ 404.1529, 416.929. When the ALJ discredits the claimant's subjective testimony, the ALJ must articulate explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225; *Foote v. Chater,* 67 F.3d 1553, 1561-62 (11th Cir. 1995). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote,* 67 F.3d at 1562.

In this instance, the ALJ found Plaintiff capable of performing less than a full range of light work due to noted postural limitations, including that Plaintiff should never climb ladders, ropes, scaffolds, and open heights and Plaintiff should only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl (Tr. 23). The ALJ further limited Plaintiff to only frequent reaching overhead with his left upper extremity as opposed to constant and repetitive reaching (*id.*). In considering Plaintiff's subjective complaints, the ALJ determined that Plaintiff was not entirely credible given the opinions of state agency medical consultants, Dr. John Rinde and Dr. Ronald Kline, and given Plaintiff's work activity, receipt of unemployment benefits, and statements to health care professionals (Tr. 25-26).[4] Accordingly, the ALJ provided explicit and adequate reasons for discrediting Plaintiff's subjective complaints, and, as the record indicates, substantial evidence supports the ALJ's findings in that regard.

As explained in greater detail above, the ALJ considered the opinions of Dr. Rinde and Dr. Kline in determining that Plaintiff's subjective complaints were not as severe as alleged and that Plaintiff maintained the ability to perform a reduced range of light work. Both Dr. Rinde and

---

[4] *See* 20 C.F.R. §§ 404.1529(c)(3)(vii), 416.929(c)(3)(vii) (each stating that the Commissioner may consider any other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms).

Dr. Kline found Plaintiff's allegations of pain and statements of other symptoms to be disproportionate when compared to the medical findings and imaging (Tr. 343, 593). Furthermore, both Dr. Rinde and Dr. Kline opined that Plaintiff maintained the ability to perform at least a reduced range of light work and cited to the evidence of record in support of that opinion (Tr. 338-45, 588-95).

In making his credibility finding and determining Plaintiff's RFC, the ALJ also considered Plaintiff's work history and other activities, which indicated Plaintiff maintained the ability to perform a reduced range of light work (Tr. 25-26). For example, in November 2008, Plaintiff reported that he was currently working as a laborer and, therefore, Dr. Faris Zakria determined that Plaintiff was able to engage in substantial gainful employment at that time (Tr. 328). During the hearing, Plaintiff reiterated that, as of November 2008, he had been looking for work, would perform side jobs where he could, and received unemployment compensation (Tr. 38-39). Plaintiff elaborated that he had looked for jobs in the construction or maintenance field and worked as a temporary laborer at the Pinellas County Jail and was actively seeking work (Tr. 40-44). Later, in June 2009, Plaintiff admitted that he initially started attending his group drug abuse therapy because he was trying to get his job driving trucks back and needed to demonstrate to his employer that he had been through treatment, although he then stated that he did not think he could drive due to his medical condition (Tr. 370). Indeed, the record is replete with references to Plaintiff's continuous search for employment, statements regarding his ability to work, and actual performance of work, such as building maintenance and other day labor activities, after his alleged disability onset (*see* Tr. 42, 50, 326, 358, 375, 437, 466, 555). Moreover, Plaintiff stated

14

on more than one occasion that his employment terminated due to either the cessation of a contract or failure of a drug test, among other things, rather than due to any impairments or limitations from such impairments (*see, e.g.,* Tr. 449, 466).

Furthermore, the ALJ considered Plaintiff's receipt of unemployment compensation in making a credibility determination (Tr. 26).  Plaintiff contends that the ALJ should not have considered the fact that Plaintiff sought and received unemployment benefits in discrediting Plaintiff's subjective complaints (*see* Tr. 39-40).  As numerous courts have explained, however, an ALJ may consider a claimant's application for and receipt of unemployment compensation in making a credibility determination.  *See Witherspoon v. Colvin*, No. CA 12-0220-C, 2013 WL 1154319, *18 n.13 (S.D. Ala. March 19, 2013); *George v. Astrue*, CV-11-S-3518-M, 2012 WL 3030157, *1-*5 (N.D. Ala. July 20, 2012); *Boyd v. Astrue*, No. 3:10-cv-105-J-JRK, 2011 WL 1259795, *6-*7 (M.D. Fla. March 31, 2011).  Here, the ALJ did not rely solely upon Plaintiff's application for or receipt of unemployment benefits in evaluating Plaintiff's credibility.  Instead, the ALJ considered the issue as the application and receipt of unemployment benefits demonstrated inconsistencies in Plaintiff's representations to various agencies and further demonstrated Plaintiff's willingness and ability to work.  *See George*, 2012 WL 3030157, at *5 ("This court understands that claimant may have had valid, even compelling, personal reasons for applying for unemployment compensation and Social Security disability benefits at the same time.  But the ALJ nonetheless was entitled to consider the inconsistencies in claimant's representations to various agencies in evaluating claimant's credibility."); *Boyd*, 2011 WL 1259795, at *7 ("[W]hen viewed in context, it is apparent the ALJ was supporting his credibility

determination by referencing the inconsistent positions of Plaintiff applying for unemployment compensation and Plaintiff's claim for disability insurance benefits" (citation omitted)); *Willimon v. Astrue*, No. 3:08-cv-1235-J-JRK, 2010 WL 1252152, *4 (M.D. Fla. Mar. 26, 2010) ("Rather, it appears the ALJ was only pointing out the inconsistency between collecting unemployment benefits while claiming to be as limited as Plaintiff alleges.  When it was necessary to report that he was able to work for the purpose of obtaining unemployment benefits, Plaintiff so reported; now that Plaintiff is seeking disability benefits, he is reporting that he is unable to work.  These positions are inconsistent" (internal citation omitted)).

In sum, the ALJ considered Plaintiff's subjective complaints in determining Plaintiff's RFC and found Plaintiff not entirely credible.  As a result, the ALJ found Plaintiff capable of performing a reduced range of light work with the noted limitations (Tr. 23).  The record indicates that the ALJ's RFC and credibility determinations are supported by substantial evidence and, accordingly, the ALJ did not err.

## IV.

Accordingly, for the foregoing reasons, it is

RECOMMENDED:

1.  The decision of the Commissioner be AFFIRMED.

2.  The Clerk be directed to enter final judgment in favor of the Commissioner and close the case.

IT IS SO REPORTED in Tampa, Florida, on this 24th day of April, 2013.

_____

ANTHONY E. PORCELLI
United States Magistrate Judge

## **NOTICE TO PARTIES**

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. 1982) *(en banc).*

Copies furnished to:
Hon. James D. Whittemore
Counsel of Record